# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| FLOYD HAWKINS, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 14-3368-CV-S-MDH-P |
| JAMES HURLEY, | ) ) ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Floyd Hawkins, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 18, 2014, seeking to challenge his 2012 convictions and sentences for manufacturing a controlled substance, delivering a controlled substance, and receiving stolen property, which were entered in the Circuit Court of Greene County, Missouri, after he pled guilty or entered an Alford plea to those offenses.

Petitioner asserts multiple claims consisting of: (1) trial court error in denying a motion to suppress in the manufacturing case and ineffective assistance of trial counsel in failing to properly present the evidence; (2) another person involved in the manufacturing case had charges dismissed after prevailing on a motion to suppress; (3) witnesses from AT&T changed their testimony between hearings and counsel was ineffective in allowing the preliminary hearing court to bind the case over for trial; (4) trial counsel was ineffective for not giving petitioner discovery on the sale case; (5) petitioner's plea of guilty was based on having a deal that guaranteed long-term treatment; (6) trial counsel was ineffective for threatening to withdraw if petitioner did not pay his legal fees in full; and (7) counsel was ineffective for not objecting to the State's argument at the sentencing hearing. (Doc. No. 1).

Respondent contends that all claims are procedurally defaulted except for petitioner's claim

regarding his understanding of the plea agreement, which respondent contends is without merit.

## **FACTUAL BACKGROUND**

On January 14, 2010, a confidential informant and Detective Nelson Kibby (working in an undercover capacity) met with petitioner. (Resp. Ex. A, p. 38). During that encounter, petitioner sold Detective Kibby a crystalline substance. (Resp. Ex. A, p. 38). Lab tests revealed that the substance was methamphetamine. (Resp. Ex. A, p. 38).

On March 18, 2010, sheriff's deputies went to petitioner's residence in response to reports concerning an overwhelming chemical odor. (Resp. Ex. A, p. 37). When nobody responded to a knock on the door, deputies entered the trailer and found petitioner, three other persons, and some items associated with the manufacture of methamphetamine. (Resp. Ex. A, p. 37). Deputies then obtained a search warrant for the residence. (Resp. Ex. A, p. 37). In searching the residence, deputies found infrared cameras hooked to a monitor, some bottles containing unknown liquids, and some chemicals used in the manufacture of methamphetamine. (Resp. Ex. A, pp. 37-38). Lab tests taken on samples of the unknown liquids revealed that some of the samples contained methamphetamine. (Resp. Ex. A, p. 38).

On July 14, 2011, petitioner sold 108 pounds of telephone wire that had been stolen from AT&T. (Resp. Ex. A, p. 38). The following day, deputies found petitioner and another person in one of the areas where the AT&T phone wire was cut and lying on the ground. (Resp. Ex. A, pp. 38-39). Additionally, the truck that petitioner and his co-defendant were using contained remnants of phone wire. (Resp. Ex. A, p. 39). In a post-<u>Miranda</u> interview, petitioner admitted to selling the phone wire on July 14 and that he had obtained that wire from various locations. (Resp. Ex. A, p. 39). The State also introduced evidence that petitioner had two previous pleas to manufacturing a controlled substance. (Resp. Ex. A, pp. 38-39).

The State charged petitioner in Greene County Case Number 1031-CR06886 with manufacturing a controlled substance (methamphetamine) as a persistent drug offender, possession of a chemical with the intent to create a controlled substance, and possession of drug paraphernalia with the intent to manufacture methamphetamine. (Resp. Ex. A, pp. 27-28). The State also charged petitioner in Greene County Case Number 1131-CR04951 with sale of a controlled substance as a persistent drug offender. (Resp. Ex. A, pp. 55-56). Lastly, the State charged petitioner in Greene County Case Number 1131-CR06271 with receiving stolen property as a persistent offender. (Resp. Ex. A, pp. 68-69).

On January 3, 2012, petitioner pleaded guilty to manufacturing a controlled substance as a prior drug offender, to the sale of a controlled substance as a prior drug offender, and to receiving stolen property as a persistent offender. (Resp. Ex. A, pp. 29, 30, 31, 35-40, 57, 58). As part of a plea agreement, the State dismissed the charges of possession of chemicals with the intent to manufacture a controlled substance and the possession of drug paraphernalia. (Resp. Ex. A, pp. 30). The plea agreement provided for concurrent sentences of fifteen years on all cases. (Resp. Ex. A, pp. 30, 58, 71). The plea agreement also provided that petitioner could argue to the court for placement in the long-term drug treatment program, but that the State could argue against such placement. (Resp. Ex. A, pp. 30, 58, 71). At sentencing, the trial court decided against placing petitioner in the long-term treatment program and, following the plea agreement, sentenced petitioner to concurrent terms of fifteen years on each case. (Resp. Ex. A, pp. 46-49, 59-62, 72-75).

In his amended state post-conviction relief motion, petitioner alleged that plea counsel was ineffective for: (1) failing to explain to petitioner that he might have to serve a fifteen years in the Department of Corrections (that the court might not place him in long-term treatment); (2) failing to interview one of petitioner's co-defendant on the manufacturing charge; and (3) failing to object to

the State bringing up a potential future charge during the sentencing hearing. (Resp. Ex. A, pp. 93-99). On post-conviction appeal, petitioner only contended that counsel was ineffective for failing to make sure petitioner understood that petitioner might have to serve the full fifteen years. (Resp. Ex. B).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## PROCEDURAL DEFAULT

Respondent is correct in his contention that all of petitioner's claims are procedurally defaulted except for the claim regarding petitioner's understanding of the plea agreement. Petitioner raised three claims in his amended post-conviction motion, challenging the failure of plea counsel to: (1) fully explain the plea agreement, (3) interview one of petitioner's co-defendant on the manufacturing charge, and (3) object to the State's discussion of an alleged new crime that petitioner committed while awaiting sentencing. (Resp. Ex. A, pp. 93-99). However, on post-conviction appeal, petitioner raised only the claim that plea counsel failed to fully explain the plea agreement. (Resp. Ex. B).

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before presenting those issues in an application for habeas relief in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Sloan, 54 F.3d at 1381.

Because petitioner only properly exhausted the claim that plea counsel failed to fully explain the plea agreement, all other claims are considered procedurally defaulted. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Insofar as petitioner may be attempting to assert ineffective assistance of post-conviction counsel as cause to excuse his procedural default, "[i]n order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation." Evans v. Luebbers, 371 F.3d 438, 445 (8th Cir. 2004) (citing Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Under Martinez v. Ryan, 132 S. Ct. 1309 (2012), an inmate can demonstrate cause based on ineffective assistance of post-conviction motion counsel if he can show that post-conviction motion counsel was ineffective in failing to raise a substantial claim

of ineffective assistance by plea counsel. Id. at 1318-19. Because petitioner fails to show that post-conviction counsel failed to raise a substantial claim of ineffective assistance of plea counsel, and because petitioner also fails to show that a fundamental miscarriage of justice will result, all of petitioner's procedurally defaulted claims will be denied.

### INEFFECTIVE ASSISTANCE OF PLEA COUNSEL FOR FAILURE TO EXPLAIN PLEA AGREEMENT

Petitioner contends that he received ineffective assistance of plea counsel because counsel failed to adequately explain the plea agreement to petitioner. Specifically, petitioner contends that he did not understand that he could be sentenced to serve up to 15 years in prison. In order to succeed on a claim of ineffective assistance of plea counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. 668, 687-90 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . ." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. This Court may not grant habeas relief unless the state court's decision "was

contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The Missouri Court of Appeals, Southern District, denied petitioner's claim, as follows:

> [Petitioner]'s sole point relied on states:
>
>> The motion court clearly erred in denying [petitioner's] Rule 24.035 motion without an evidentiary hearing, because [petitioner] pleaded factual allegations which, if proved, would warrant relief and which are not entirely refuted by the record, in that [petitioner] claimed that he received ineffective assistance of counsel . . . , because his motion alleged that counsel failed to explain to [petitioner] "the very real possibility that he would end up serving as much as 15 years in the Department of Corrections," [petitioner's] mistaken belief that he would be sentenced to long-term treatment affected the voluntariness of his plea and constituted ineffective assistance of counsel because [petitioner] did not receive such treatment, and [petitioner] would testify that [he] would not have pleaded guilty if he had known that he would not receive long-term drug treatment but instead would have gone to trial.
>
> [Petitioner] further argues:
>
>> A defendant could believe that he was going to receive long-term treatment based upon what he was being told by his attorney even if he also knew that the state would be opposed to that happening. An evidentiary hearing was required to explore whether [petitioner's] belief that he was going to get long-term treatment even though the state was opposing was reasonable based upon what he was being told by counsel, particularly since [petitioner] could "somewhat" read, write, and understand the English language . . . , and he had been diagnosed and treated for a mental disorder.[]

While recourse is available to a movant "aggrieved by the ineffective assistance of counsel at sentencing[,]" movant must demonstrate "there is a reasonable probability that sentencing was influenced by ineffective assistance of counsel during sentencing." Cherco v. State, 309 S.W.3d 819, 829 (Mo.App. 2010)." Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the mistake is based upon a positive representation upon which the movant is entitled to rely." Dorsey v. State, 115 S.W.3d 842, 845 (Mo. banc 2003). The record here refutes that petitioner's alleged mistake as to his sentence was either reasonable or based upon a positive representation upon which he was entitled to rely. We address both in reverse order.

First, [petitioner] does not claim in his motion that his plea counsel was ineffective for making a positive representation upon which [petitioner] based his belief that his request for long-term drug treatment would be granted. While he testified post-sentencing that his plea counsel promised he would get long-term drug treatment, his claim in his motion for post-conviction relief is that plea counsel was ineffective by his "[f]ailure to explain to [petitioner] the very real possibility that he would end up serving as much as 15 years in the Department of Corrections.". A "failure to explain" is not a positive representation. The failure to allege a positive representation by plea counsel upon which [petitioner] based his erroneous belief as to his sentence is fatal to [petitioner]'s claim. Nevertheless, even if he had alleged plea counsel's positive representation in accordance with his post-sentencing testimony to the plea court, the motion court's finding that the existence of that promise is refuted by the record is not clearly erroneous. Our review of the whole record convinces us that each of the motion court's factual findings as to the contents of the plea agreements, [petitioner]'s plea petition, and [petitioner]'s plea hearing testimony twice denying any other promises are accurate and fully supported by the record. Based upon these findings, we are not left with a definite and firm impression that a mistake has been made by the motion court in concluding that [petitioner]'s post-sentencing claim of a promise by plea counsel is refuted by the record. Moreover, [petitioner]'s representations in his plea petition by which he "acknowledged that no one had any authority to make any promises other than what was specifically set out in his petition and that sentencing was solely within the control of the judge" refute that [petitioner] was entitled to rely upon any promise otherwise made by plea counsel.

Second, [petitioner]'s alleged mistaken belief that he would be sentenced to long-term drug treatment was not reasonable. Here, a thorough written and oral record was made as to the exact promises about sentencing that were made to [petitioner], the fact that no other promises had been made, and that [petitioner] could not rely upon any promises made by anyone else. The promises made included that the State was opposed to [petitioner] being sentenced to long-term drug treatment. [Petitioner] was repeatedly reminded in the three plea agreements, his plea petition and twice by the plea court that the State would oppose long-term drug treatment. [Petitioner] acknowledged in his plea petition that "sentencing was solely within the control of the judge." Plea counsel certified to the plea court that he had "gone over"

> the plea petition with [petitioner]. [Petitioner] testified to the plea court, under oath, that he understood and had no questions about the plea petition and the plea agreements. [Petitioner] heard the State announce at sentencing that "[t]he only issue before the Court would be whether this defendant gets long-term treatment or whether he goes for 15 years[,]" and then heard the State argue at length against long-term drug treatment and in favor of the outright fifteen-year sentence. Based upon our review of the whole record, any belief that petitioner had about the sentence he would receive other than he faced the "very real possibility that he would end up serving as much as 15 years in the Department of Corrections" was unreasonable.

(Resp. Ex. D, pp. 9-12) (footnotes omitted).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). The determination that counsel's performance did not amount to ineffective assistance of counsel was not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see 28 U.S.C. §2254(d)(1) and (2).[2] As such, the state court's decision is entitled to deference and petitioner's claim for ineffective assistance of counsel will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004).

---

[2] According to the opinion of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is denied; this case is dismissed with prejudice; and a certificate of appealability is denied.

 /s/ *Douglas Harpool*
DOUGLAS HARPOOL
UNITED STATES DISTRICT JUDGE

Springfield, Missouri,

Dated:  May 8, 2015.